**WALES TRUCKING COMPANY et al.,**
*Appellants,*

v.

**Charlie KISENER et ux., Appellees.**

**No. 7519.**

Court of Civil Appeals of Texas.
Texarkana.

Oct. 29, 1963.

Rehearing Denied Nov. 19, 1963.

Jack Price, R. O. Kenley, Jr., Kenley, Ritter & Boyland, Longview, T. R. Florey, Jr., Mt. Pleasant, for appellants.

Russell & Perkins, Old & Moye, Mt. Pleasant, W. C. Hancock, Rocy Bell, Pittsburg, for appellee.

CHADICK, Chief Justice.

This is a tort action. The trial court awarded damages to the parents of a minor fatally injured in an automobile collision and the judgment is affirmed.

For several years it has been a custom for the students in the upper grades of Pittsburg, Texas, High School to attend an outing immediately following the close of the spring school term. Kerry Kisener, a Junior student in the school, and seven teen-age companions were returning from the Daingerfield State Park where the annual affair was held on June 1, 1962, when their vehicle collided with a tractor-trailer rig. At the time Kerry was driving his parents' 1957 Chevrolet automobile. At his right on the front seat was Carol Jean Crabtree, and the remainder of the seat accommodated another girl and boy. Two other couples occupied the back seat of the car.

The Kisener automobile was moving eastward on State Highway No. 11 in Titus County, a short distance west of the town of Cason at about 2:30 in the afternoon when it came upon the tractor-trailer,

hereafter referred to as truck, carrying a load of thirty-two foot lengths of 4 inch diameter oilfield pipe. From the point of the collision between these vehicles Highway 11 is substantially straight for several hundred yards east and west. The highway is asphalt topped, and its twenty-four and one-half foot width is divided into two traffic lanes by a white dash stripe painted in the center. Traffic moving westerly uses the north lane, that moving easterly uses the south lane. The grade of the highway at the collision point is slightly higher east than west, the fall being very gradual and the roadway almost level in the area of the collision. For some time prior and at the time of the collision rain was falling and the road surface was wet.

The loaded truck entered the highway from a farm-to-market road approximately 300 yards east of the collision point. Engine trouble developed as the truck driver pulled onto the highway, but as it appeared to right itself the driver continued until the engine suddenly ceased to operate. The truck came to a standstill in the north lane headed west, with the left rear wheel of the trailer five feet north of the road's center stripe; both front wheels were in the paved traffic lane, but the distance of the left front from the center is not shown. The Kisener car occupied as described collided headon with the rear end of the loaded truck. Kerry Kisener was dying and probably expired as witnesses at the scene sought to remove him from the wrecked car. Carol Jean Crabtree died in a hospital some six hours later. Others in the Kisener car were injured but not fatally.

The parents of Kerry Kisener and the parents of Carol Jean Crabtree brought separate suits in the District Court of Titus County against the driver of the truck, Hubert Eugene Edwards, and the owner of the truck, Wales Trucking Company. By agreement the two suits were consolidated for trial. At the end of the ensuing jury trial, in conformity with its findings upon special issues, judgment in favor of the parents of each child was entered. The appellants have perfected an appeal from the judgment entered against them in favor of the appellees, Charlie Kisener and wife, Ada Kisener, parents of Kerry Kisener.

The first point of error in appellants' brief requires a review of the trial court's ruling allowing plaintiffs to make a closing argument to the jury. The appellants' bill of exception preserving the facts pertinent to the point certifies the following:

"* * * that when time came for the arguments to be made in the case it was the understanding of the Court that Bird Old, Jr., (counsel for the Crabtree plaintiffs) would make the opening argument with Bascom Perkins (counsel for the Kisener plaintiffs) making the closing argument. After Attorney Old had made his argument the defendant's counsel in open Court waived argument and objected to presentation of closing argument by Attorney Perkins.

"Whereupon, the Court allowed such closing argument over the objection of defendants thereto, and to which action of the Court the defendants duly excepted." (interpolation added)

Rule 269 Vernon's Annotated Texas Rules governs arguments to the jury. Literally and strictly speaking the bill of exception certifies that the trial court permitted a closing argument. Subdivision (b) * of Rule 269 directed that the concluding argument be confined to a reply to the argument of opposing counsel. The argument made could not have been a con-

---

* Rule 269.

\* \* \*

"(b) In all arguments, and especially in arguments on the trial of the case, the counsel opening shall present his whole case as he relies on it, both of law and facts, and shall be heard in the concluding argument only in reply to the counsel on the other side.

\* \* \*"

cluding argument of the nature authorized by the rule as defendants counsel made no argument. Allowing additional argument in the guise of a concluding argument violated subdivision (b) of the rule. The facts, as certified, do not create a factual environment in which judicial discretion operates. The exercise of discretion is allowable in instances when no procedure is prescribed or where more than one course of action is proper. See definition in Bouvier's Law Dictionary. In this instance the bill of exception certifies that a clear rule was violated.

Although the trial court erred in allowing a concluding argument, reversible error is not shown. The bill of exception does not apprise this court of the nature of the second summation or other facts or circumstances demonstrating harm to the appellant or from which harm might be inferred. As the record stands, the error is harmless. Rule 434. See also Dallas Joint Stock Land Bank of Dallas v. Magee, Tex.Civ. App., 117 S.W.2d 473, apprvd. 134 Tex. 620, 136 S.W.2d 1117 (Comm. of App. op. adpt.).

▮ Contributions the parents of Kerry Kisener could have reasonably expected to receive from Kerry after he reached twenty-one years of age, as an element of damage to be recovered by the parents, is the subject of appellants' points of error six, seven, eight and nine. The attack is by way of insufficient evidence and no evidence to submit the element in the damage issue or support a favorable jury finding thereon.

Safeway Stores, Inc., of Texas v. Webb, Tex.Civ.App., 164 S.W.2d 868, W/R, following a review of a number of cases generalizes that " * * * the function of evidence essential to support such an issue, in a case like this, is to provide the foundation or basis for the opinion of the jury." It is in evidence that Kerry Kisener was a normal seventeen year old boy, a "B" average student, with such proficiency in an agriculture subject that he received a gold star award. His manners and person-

ality were pleasing, he was industrious, affectionate toward his parents, a willing participant in the chores about his home and in farm and other work connected with his father's agricultural and livestock business. He showed initiative in securing outside employment, saved his earnings and frequently bought his parents small presents. He regularly attended church, was obedient to his parents and teachers, as well as being well adjusted and possessing many attributes of leadership. He was planning to attend college and become an architect. The life expectancy of his parents is shown, together with their health and habits.

With this basic information the jury could in the exercise of sound judgment, experience and common sense determine this issue in the manner contemplated by Art. 4677, V.A.T.S. Accordingly, it is held that there was sufficient evidence to submit this element of damage and support the jury's finding thereon. See Safeway Stores Inc., of Texas v. Webb, supra; Rhoden v. Booth, Tex.Civ.App., 344 S.W. 2d 481, N.R.E.

Among the jury's several findings of primary negligence by defendants are two that may be discussed together. The jury found that the truck stopped a sufficient length of time, prior to collision, for the driver to have displayed, at approximately 100 feet in front and rear of the truck, red flags or portable reflector units prescribed by Art. 6701d, Sec. 138, to warn approaching traffic of the presence of the stalled truck. By answer to another special issue it was found that the driver failed to personally direct traffic around his standing truck. That the driver neither put out the warning devises nor directed traffic is undisputed. In each instance it was found that the omission was negligence and the proximate cause of the collision. Material to these findings and the center of dispute is an answer by the jury finding the truck was stopped a sufficient length of time prior to the collision for the driver to display red flags or portable reflector units 100 feet in the truck's front and rear. All these

findings are attacked as being without evidence to support them, or as being against the overwhelming weight and preponderance of the evidence. (Points twenty-one, twenty-two, twenty-seven and twenty-eight).

The driver testified that when his truck stopped he immediately dismounted from the cab, looked in both directions for oncoming traffic, seeing none, he walked to the front of the truck and stepped upon the front bumper and raised one side of the engine hood to look in on the motor. While so engaged he felt the shock of the collision. He estimated that his truck had not been standing longer than one and one-half minutes, at most two, and says that he did not have time to put out the warning flag or reflectors before the collision occurred. In his testimony he said that it was a "good half mile" west of his stalled truck to a curve in the road, beyond which traffic on the road might not be seen from the truck. Another witness estimated the distance as being from five to eight-tenths of a mile. The record does not contain evidence of the eastward-most distance the contours of the road allowed traffic approaching from that direction to be seen. However, pictures of the east and west segment of the road are in evidence, together with testimony of distances between certain objects shown on them. From this evidence it might be reasonably found that traffic from the east could have been seen equally as far as that from the west.

■■ The testimony which included the speed of approaching cars, etc., is conflicting in some respects and subject to construction in others. It is elementary that the jury might disregard the truck driver's testimony that he had stopped only ninety seconds before the collision. The traditional role of the jury is to reconcile the evidence. In this case the facts proven and the inferences to be drawn from the proof might be construed by a jury as showing that a considerably longer period of time

elapsed between the stall and the collision than the driver or his witnesses estimated. The evidence unquestionably supports the jury's finding that the driver had time to do so, but failed to direct traffic around his truck though it may be less satisfactory in support of the other issues discussed. See Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The points discussed and remainder of the appellants' thirty-one points of error have been examined but as the record presents the case none require a reversal of the judgment. Accordingly the judgment of the trial court is affirmed.

